526 So.2d 308 (1988)
Charles G. WILKINS, et al., Plaintiffs-Appellants,
v.
STATE of Louisiana, DOTD, et al., Defendants-Appellees.
No. 87-285.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
Chris Smith, Leesville, Robert R. Rainer, Baton Rouge, for plaintiffs-appellants.
Robert L. Oliver, Jerry L. Finley, Baton Rouge, Gist, Methvin, Hughes & Munsterman, De Witt T. Methvin, Jr., Alexandria, Hall, Lestage & Landreneau, H.O. Lestage, Deridder for defendants-appellees.
Before DOMENGEAUX and GUIDRY, JJ., and REGGIE[*], J. Pro Tem.
*309 GUIDRY, Judge.
Plaintiff appeals a decision of the trial court granting a motion for summary judgment which dismissed the demands of Kenneth Troy Gallaghan, a minor, against Sue E. Case and her insurer, State Farm Mutual Automobile Insurance Company (State Farm).[1] We reverse.
This suit arises out of a one vehicle accident which occurred on March 2, 1984, in Vernon Parish, Louisiana. At the time of the accident, Sue E. Case was operating a 1982 Datsun 200 SX, owned by Christine P. Gallaghan, in a westerly direction on Hwy. 1212. As the vehicle entered a sharp curve to the left, it ran off the north side of the roadway, went into a ditch and crashed into a culvert fatally injuring Ms. Gallaghan, who was riding as a passenger in her own automobile.
The 1982 Datsun was insured for liability by Allstate Insurance Company with a policy limit of $25,000.00 for death or injury to any one person, as well as a $25,000.00 limit for death or injury of any one person under the uninsured motorist coverage.
Sue Case had an automobile liability policy with State Farm on a vehicle owned by her which provided excess liability coverage to her while operating any other vehicle.
At the time of her death, Christine Gallaghan was divorced and had one child, Kenneth Troy Gallaghan, who was then 11 years old. After the death of his mother, this child went to live with Christine Gallaghan's sister, Ellen S. Wilkins, and her husband, Charles G. Wilkins, in Ogden, Utah. There, the Wilkinses qualified as joint guardians of the child and his estate in proceedings entitled, "In the Matter of Kenneth Troy Gallaghan, a Minor", Probate Number 15744, Second Judicial District Court of Weber County, State of Utah. On July 27, 1984, the guardians, acting through a Utah attorney in Ogden, Utah, dealing with a Utah representative of Allstate Insurance Company (hereafter Allstate), and pursuant to an order of the Honorable John F. Wahlquist, Judge of the Second Judicial District Court of Weber County, State of Utah, compromised and settled the claims of the minor, Kenneth Troy Gallaghan, against Allstate. In the settlement agreement, plaintiff made no express reservation of rights against any other possible co-debtors in solido.
Thereafter, plaintiff filed suit, on behalf of the minor, in the Thirtieth Judicial District Court, Vernon Parish, Louisiana, on March 1, 1985. Named defendants in this suit were Sue Case and her liability insurer, State Farm; the State of Louisiana, through the Department of Transportation and Development, as owner of the highway; Alquin Wander, the owner of the private driveway; and, the latter's homeowner's insurer, State Farm Fire & Casualty Company.
On September 25, 1986, a motion for summary judgment was filed by defendants-appellees, Sue Case and State Farm, alleging that the compromise and settlement document executed in Utah on July 27, 1984, that released Allstate effectively released Sue Case and State Farm (the alleged tortfeasor and her insurer) since they were solidarily liable with Allstate and plaintiff did not reserve the right to proceed against them. See La.C.C. art. 2203 (1870), infra, repealed December 31, 1984.[2] The motion was heard and judgment was rendered granting the motion and dismissing the minor's suit against Sue Case and State Farm. This appeal followed.
La.C.C.P. art. 966 provides in pertinent part:
"The motion for summary judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together *310 with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Appellant concedes that there is no issue of material fact present but contends that the trial court erred in its conclusion that Case and State Farm are entitled to summary judgment as a matter of law. In support of this contention, appellant urges that the ruling of the trial court is erroneous because "the issue is a conflict of law question and the trial court incorrectly applied Louisiana law to a settlement which was entirely a Utah proceeding, dealing with Utah domiciliaries, with approval of a Utah court, executed and passed in Utah".
In ruling for the movers on the motion for summary judgment, the trial judge stated:
"I appreciate our law and having no evidence of what the law may be in the State of Utah, I appreciate the law applicable to this case to provide that the release of a solidary obligor releases all other solidary obligors in the absence of their being an express reservation. ... In short I believe that if there is an issue to be established, it's incumbent upon the opponent to the motion for summary judgment to make the appropriate filings to establish that an issue does, in truth and in fact, exist and that under these circumstances, the release being as clear as it is, I simply find no issue."
We find that the district court erred when it assumed Louisiana law to be the same as Utah law for the following reasons. First, both the trial court and movers were aware that plaintiff would rely on the law of Utah and was attempting to obtain proof of the substance thereof. One continuance had been granted for such purpose, but at the time of the hearing, nothing from Utah had yet arrived. With such knowledge, the fact that plaintiff had, up to that time, failed to introduce evidence of the Utah law, did not justify the trial judge's assumption that Utah law is the same as Louisiana law. La.C.C.P. art. 1391 provides:
"Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States.
The court may inform itself of such laws in any manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information.
The determination of such laws shall be made by the court, and not by the jury, and shall be reviewable.
A party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise.
The law of a jurisdiction other than those referred to in the first paragraph of this article shall be an issue for the court, but shall not be subject to the foregoing provisions concerning judicial notice."
In Cambre v. St. Paul Fire and Marine Insurance Co., et al., 331 So.2d 585 (La. App. 1st Cir.1976), writ refused, 334 So.2d 434, 435 (La.1976), our brethren of the First Circuit stated:
"While we are cognizant of our duty to take judicial note of the law of other states pursuant to La.C.C.P. Article 1391, we view the cited statute as eliminating the necessity of proving foreign law as a fact, it does not require the courts to take judicial notice of foreign law, except when the law of another state is brought to the court's attention by the record or briefs." (Emphasis ours).
Further, in Gathright v. Smith, 368 So.2d 679 (La.1978), our Supreme Court recognized the court's authority to inform itself, on its own initiative, of foreign law even when the foreign law's applicability has not been called to the court's attention. In that case, our Supreme Court stated:
"The first two paragraphs of art. 1391, provide us with the authority to inform ourselves, on our own initiative, and take judicial notice of foreign law, even when *311 the foreign law's applicability has not been called to the attention of the trial court. See Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 12 A.L.R.2d 939 (1949); Harry L. Sheinman & Sons v. Scranton Life Ins. Co., 125 F.2d 442 (3d Cir.1942). See also Quickick, Inc. v. Quickick International, 304 So.2d 402 (1st Cir.1974), writ denied, 305 So.2d 123 (1974), application denied, 306 So.2d 310 (1974). But see Cambre v. St. Paul Fire & Marine Ins. Co., 331 So.2d 585 (1st Cir.1976), writ denied, 334 So.2d 434 ([La.]1976) (where the foreign law was not cited or relied upon in brief or oral argument). Furthermore, we recognize that the reason often stated for demanding notice in those states which require that the foreign law be pleaded, see Annot., 23 A.L. R.2d 1437, 1449, is that without such notice the opponent would not be warned beforehand that the court may take judicial notice of foreign law and might not be able to prepare himself on that law. Respondent in the instant case, although not given notice of relators' intention to rely on California law on the trial level, has been given sufficient opportunity to research the relevant law since the argument was raised in brief in the appellate court. Consequently, we may refer to California law to determine the status of funds derived from the sale of the California property."
See also Mahmud v. Mahmud, 444 So.2d 774 (La.App. 4th Cir.1984).
In the case at bar, plaintiffs' motion for a continuance of an earlier trial fixing evidences the fact that all concerned knew that plaintiff would rely on the law of Utah in opposing the motion for summary judgment filed by Case and State Farm. In spite of this fact, the matter was heard before plaintiff secured the necessary proof and the court did not inform itself of such laws and take judicial notice thereof. Subsequent to rendition of the trial court's judgment, which is the subject of our appellate review, plaintiff received and filed into the record an affidavit from an attorney in good standing, admitted to practice in the State of Utah, confirming that under Utah law, the compromise agreement and release of Allstate Insurance Company, without the reservation of rights against others, would not operate as a release of any party other than Allstate. (See Appendix I). Additionally, in brief, plaintiffs supplied this court with Utah Code Ann. Sec. 78-27-40 through 78-27-45 (1953) (attached as Appendix II), which fully supports the conclusions set forth in the affidavit. Finally, this information and our independent research enables us to judicially notice that, under the laws of Utah, the release document, relied upon by defendants, Case and State Farm, did not have the effect of releasing any party other than Allstate Insurance Company. Therefore, if the law of Utah is to be applied in the case sub judice, the prior release of Allstate did not effect a releasing of Case and State Farm as joint tortfeasors and the rendition of summary judgment in their favor was error. The issue then becomes whether to apply Utah law or Louisiana law.
La.C.C. art. 10 (1870), as amended, provides in pertinent part as follows:
"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect...."
The excerpted language calls for application of the lex loci contractus rule in determining the effect to be accorded written instruments. In a number of decisions involving contractual rights, the appellate courts of this state, without mention of La.C.C. art. 10 (1870), have ignored the lex loci contractus rule and employed an "interest analysis" theory in determining the choice of law to be applied. See Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir. 1976), writs denied, 332 So.2d pages 805 and 820, 333 So.2d 242 (La.1976). The authority cited by these courts as the rationale for adopting the "interest analysis" theory is Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973). Jagers did not address the application of La.C.C. art. *312 10 and the lex loci contractus rule. Rather, it dealt with conflicts in a tort situation and ruled that where the application of conflicting tort law was concerned the rule of lex loci delicti should be abandoned in favor of an interest analysis approach.
"... `Conflict of Laws is that part of the law of each state which determines what effect is given to the fact that the case may have a significant relationship to more than one state.' Restatement, Second, Conflict of Laws, § 2 (1969).
No reason advanced for perpetuating the doctrine which would apply the law of the place of the tort ... is either convincing or controlling.
. . . . .
When the foreign state has no interest in the application of its law in Louisiana litigation, we deem that the application of Louisiana law by Louisiana courts will contribute much greater predictability, certainty and constancy to the law." (Emphasis ours). Jager, supra, at 311, 312.
A good example of the application of both La.C.C. art. 10 (lex loci contractus) and the interest analysis theory in a tort case is found in the recent case of Hanzo v. Liberty Mutual Insurance Company, 508 So.2d 928 (La.App. 4th Cir.1987). In Hanzo, three Louisiana residents, while vacationing in Hawaii, were involved in a one vehicle accident. The rental vehicle in which they were riding was insured by Travelers Insurance Company (Travelers) and the two plaintiffs, Hanzo and Mason, were insured in Louisiana by Liberty Mutual Insurance Company (Liberty). The third Louisiana resident, Koen, was the driver and was a defendant in the suit. Our brethren of the Fourth Circuit applied Hawaii law in interpreting the Travelers' insurance policy and Louisiana law in deciding the tort question (liability) and in interpreting the Liberty policies:
"Dealing first with the issue of which state's law should determine Traveler's liability, we refer to C.C. Art. 10 which provides that "[t]he form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed." In the present case, the Travelers insurance policy was issued in the state of Hawaii to Dollar-Rent-A-Car.

. . . . .
The terms of the Travelers policy plainly state that the insurer would pay both "no-fault" benefits and damage claims the insured must pay which fall within the scope of the "no-fault" insurance policy. In our opinion, the Travelers policy must be interpreted under the Hawaii "No-Fault" law to give full effect to this policy language and the intent of the parties.
The second issue presented by Liberty is whether the trial court properly applied Louisiana law to find Koen negligent and declare him an underinsured motorist, thus establishing Liberty's liability under its uninsured motorists policies. Under the "interest analysis" approach to resolving choice of law problems which was adopted by the Louisiana Supreme Court in Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973), Louisiana law should be applied when this state has an interest in applying its law and the foreign state has none.
In the instant case, the underlying lawsuit involves two Louisiana residents suing another Louisiana resident. Additionally, the uninsured motorist policies in question were issued and delivered in Louisiana to Louisiana residents. Under these facts we cannot conceive of any interest which Hawaii might have in applying its law to determine Koen's tort liability or his status as an underinsured motorist. The only nexus between Hawaii and the principal parties to this suit is that the accident occurred there...."
Hanza, supra, at 930, 931.
In our view, considering the particular facts of the case sub judice, application of Utah law is dictated whether the choice of law problem presented is resolved by application of the lex loci contractus rule or the "interest analysis" approach is employed.
*313 As previously mentioned, all negotiations preceding the contract between plaintiff and Allstate were conducted in Ogden, Utah. All of the contracting parties, other than Allstate, were residents and domiciliaries of the State of Utah. Allstate was authorized to do and did business in the State of Utah. The contract document was passed in the State of Utah and performance thereof is to take place in Utah. Finally, and of considerable import, is the fact that the settlement involved the rights of a Utah minor and was confected pursuant to authority granted the Guardians by a court of proper jurisdiction in the State of Utah. Clearly, all elements for application of the lex loci contractus rule are present and dictate applicability of the laws of Utah in determining the effect to be accorded the agreement between plaintiff and Allstate. It is equally clear that employing the "interest analysis" approach, as between the competing jurisdictions, Utah has the greatest interest in the application of its law. The "interest analysis" choice of law doctrine used in Louisiana courts derives from the Restatement of Conflicts of Laws 2d (1971). In the case of a contractual dispute, Section 188(2) of the Restatement lists the facts to be considered in making a choice of law determination:
"(2) In the absence of an effective choice-of-law by the parties, the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to the issue include:
(a) The place of contracting;
(b) The place of negotiation of the contract;
(c) The place of performance;
(d) The location of the subject matter of the contract; and
(e) The domicile, residence, nationality, place of incorporation and place of business of the parties."
All of the elements set forth above are present and indicate that the State of Utah has the most significant contact with any controversy involving the effect to be accorded the agreement in question and hence, the greatest interest in the application of its law. For these reasons, we conclude that there can be no doubt that Utah law applies and is determinative of the issue presented.[3]
As aforementioned, we are satisfied that, under the laws of Utah, the release by plaintiff of Allstate did not operate as a release of any party other than Allstate. For these reasons, we determine that the trial court erred when it granted summary judgment dismissing plaintiff's demand against Sue E. Case and State Farm Mutual Automobile Insurance Company. Accordingly, the motion for summary judgment filed by Case and State Farm is denied and this matter is remanded to the trial court for further proceedings consistent with the views expressed.
All costs of this appeal are assessed to Sue E. Case and State Farm Mutual Insurance Company. Costs at the trial level are to await a final determination of this matter.
REVERSED AND REMANDED.

APPENDIX I

Charles G. Wilkins and Ellen S. Wilkins, Joint Guardians of the Estate of the Minor, Kenneth Troy Gallaghan

v.

State of Louisiana, Through the Department of the Transportation and Development, et al.

No. 39,632 DIVISION " "

30th Judicial District Court

Parish of Vernon

State of Louisiana

AFFIDAVIT
STATE OF UTAH
COUNTY OF SALT LAKE
BEFORE ME, the undersigned Notary Public, personally came and appeared:

*314 GLEN M. RICHMAN
who, after being sworn by me, deposed and said that:
That he is a resident of and domiciled in the aforesaid state and county;
That he is an attorney at law admitted to the practice of law in the State of Utah and a member of the Utah Bar Association, in good standing;
That he has no interest in the outcome of the above captioned proceedings;
That he has reviewed copies of the Order Appointing Guardian and Letters of Guardianship In the Matter of Kenneth Troy Gallaghan, a minor, dated July 26, 1984, and issued by the 2nd Judicial District Court of Weber County, Utah;
That he has also reviewed copies of the Settlement Agreement and Release dated July 27, 1984 and the Receipt dated July 27, 1984 attached to the Motion for Summary Judgment filed by Sue Ellen Case and State Farm Mutual Automobile Insurance Company in the above entitled and numbered cause;
That he has also reviewed the law of the State of Utah, particularly Section 78-27-42 of the Utah Code Annotated, relative to the release of a joint tortfeasor, and, based upon the review of the above referred to documents and the law of Utah, he is of the opinion that under Utah law in effect at the time the Settlement Agreement and Release were executed the said release would not have the effect of releasing any party other than Allstate Insurance Company.
 s/Glen M. Richman
 GLEN M. RICHMAN
SWORN TO AND SUBSCRIBED before me at Salt Lake City, Utah on this 17th day of December, 1986.

(s) Alice Ann Wilcox

NOTARY PUBLIC

Residing at Salt Lake City, Utah

My commission expires: 
February 27, 1989
(seal)

APPENDIX II
78-27-40. Settlement by joint tort-feasorDetermination of relative degrees of fault of joint tort-feasors"Joint tort-feasor" defined.(1) A joint tort-feasor who enters into a settlement with the injured person shall not be entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by that settlement.
(2) When there is a disproportion of fault among joint tort-feasors to an extent that it would render inequitable an equal distribution by contribution among them of their common liability, the relative degrees of fault of the joint tort-feasors shall be considered in determining their prorata shares, solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.
(3) As used in this section, "joint tort-feasor" means one of two or more persons, jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.
History: L.1973, ch. 209, § 4.
78-27-41. Individual liability of joint tort-feasors, right of indemnity under law, and contractual right to contribution or indemnity not affected.Nothing in this act shall affect:
(1) The common-law liability of the several joint tort-feasors to have judgment recovered, and payment made, from them individually by the injured person for the whole injury. However, the recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasors.
(2) Any right of indemnity which may exist under present law.
(3) Any right to contribution or indemnity arising from contract or agreement.
History: L.1973, ch. 209, § 5.
78-27-42. Release of joint tort-feasor Reduction of injured person's claim.A release *315 by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors, unless the release so provides, but reduces the claim against the other tort-feasors by the greater of: (1) The amount of the consideration paid for that release; or (2) the amount or proportion by which the release provides that the total claim shall be reduced.
History: L.1973, ch. 209, § 6.
78-27-43. Release of joint tort-feasor Requirements for relief from liability to make contribution.(1) A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless that release:
(a) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and
(b) Provides for a reduction, to the extent of the prorata share of the released tort-feasor, of the injured person's damages recoverable against all the other tort-feasors.
(2) This section shall apply only if the issue of proportionate fault is litigated between joint tort-feasors in the same action.
History: L.1973, ch. 209, § 7.
78-27-44. Personal injury judgments Interest authorized.In all actions brought to recover damages for personal injuries sustained by any person, resulting from or occasioned by the tort of any other person, corporation, association or partnership, whether by negligence or willful intent of that other person, corporation, association or partnership, and whether that injury shall have resulted fatally or otherwise, it shall be lawful for the plaintiff in the complaint to claim interest on the special damages alleged from the date of the occurrence of the act giving rise to the cause of action and it shall be the duty of the court, in entering judgment for plaintiff in that action, to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on that amount calculated at 8% per annum from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment, and to include it in that judgment.
History: L.1975, ch. 97, § 1.
Title of Act.
An act relating to personal injury actions and providing for interest to be assessed therein.L.1975, ch. 97.
78-27-45. Financial information privacy Written consent or court order for disclosure by financial institutionException "Person" defined.No person acting in behalf of the state, or any agency, office, department, bureau or political subdivision thereof, shall request or obtain, by subpoena or otherwise, information from a state or federally chartered financial institution regarding the financial transactions or other records reflecting the financial condition of any person without first obtaining written permission from the person whose financial transactions or other records of financial condition are to be examined, or obtaining an order from a court of competent jurisdiction permitting access to the information. This section does not apply to reviews made by the commissioner of financial institutions to determine whether or not a financial institution is operating in accordance with law. As used in this act "person" shall include an individual, corporation, partnership or association.
History: L.1977, ch. 143, § 1.
NOTES
[*] Judge Edmund M. Reggie, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] As employed in this opinion, the terms "plaintiff" or "appellant" refer to Charles G. Wilkins and Ellen S. Wilkins, joint guardians of the minor, Kenneth Troy Gallaghan, and his estate.
[2] C.C. art. 2203 was repealed by the legislature in its revision of Louisiana's Obligations law. Act 331 of 1984. In place of Article 2203 (1870), the act creates new Article 1803, effective January 1, 1985. New Article 1803, which rejects the express reservation requirement, does not apply to the instant case which arose before its effective date.
[3] Although unnecessary to our decision, we observe that if Louisiana law were applicable, serious argument could be advanced in opposition to appellees contended for effect of the agreement between plaintiff and Allstate, since the agreement involves the apparent inadvertent and unauthorized relinquishment of a minor's rights. See Johnson v. Ford Motor Company, 707 F.2d 189 (5th Cir. 1983).