615 So.2d 1369 (1993)
EM NOMINEE PARTNERSHIP COMPANY, Quinoco Consolidated Partners, L.P., Quinoco Petroleum, Inc. and QMH Oil & Gas, Ltd., Plaintiffs-Appellants,
v.
ARKLA ENERGY RESOURCES, A DIVISION OF ARKLA, INC., Defendant-Appellee.
No. 24532-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
Lapeyre, Terrell & Randazzo by F. Henri Lapeyre, Jr. and Matthew J. Randazzo, III, New Orleans, for plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by Michael E. Riddick, David N. Matlock and John N. Bellinger, Shreveport, for defendant-appellee.
Before MARVIN, C.J., and SEXTON and LINDSAY, JJ.
MARVIN, Chief Judge.
In this declaratory action seeking interpretation of a 1989 settlement of litigation and disputes between plaintiffs, who sold gas from several wells to defendant under earlier contracts containing a "take or pay" *1370 provision, the plaintiffs appeal a summary judgment in favor of defendant. Plaintiffs also contend that their motion for summary judgment should have been granted.
While the denial of a summary judgment, an interlocutory judgment, ordinarily is not appealable, we review that judgment on the appeal of a summary judgment granted in favor of the opposing party, that judgment being a final judgment which is appealable. Leonard v. Stephens, 588 So.2d 1300 (La. App. 2d Cir.1991).
We find that summary judgment for either of the parties would be improper to determine the intent of parties to the settlement agreement. Generally, when litigants dispute what matters they intended to compromise, a genuine issue of material fact exists which precludes summary judgment. CC Art. 3073; See Hall v. Management Recruiters of New Orleans, Inc., 332 So.2d 509 (La.App. 4th Cir.1976); Lavalais v. Allen, 452 So.2d 1294 (La.App. 3d Cir. 1984), and authorities discussed therein.
We therefore reverse defendant's summary judgment and affirm the denial of summary judgment to plaintiffs. CCP Art. 966.

FACTS
Defendant is Arkla Energy Resources, which in 1980 was Arkansas Louisiana Gas Company and which now is a division of Arkla, Inc. For simplicity, we shall refer to defendant as Arkla. Plaintiffs are:
(1) EM Nominee Partnership Company,
(2) Quinoco Consolidated Partners, L.P.,
(3) Quinoco Petroleum, Inc., and
(4) QMH Oil & Gas, Ltd.
Each plaintiff except the last, hereafter styled QMH, was a party to the 1989 settlement agreement with Arkla. The settlement listed several gas wells in Louisiana and Oklahoma the production from which was subject to Arkla gas purchase contracts earlier executed. The settlement did not list the provocation for plaintiffs' 1990 declaratory action, a gas well in the Kinta Field in Latimer County, Oklahoma, which is referred to as the Farmers Union well, here called the FU well. To posture this appeal, a brief history of the FU well is needed.
Gas purchase contracts with Arkla for production from the FU well were executed respectively on February 14, 1980, by A.C. Black, operator of the well, and on July 23, 1980, by an entity known as ENI Joint Venture 1979 IV, hereafter styled ENI, which owned 37.5 percent of the production of the FU well. ENI assigned its interest in the FU well to plaintiff Quinoco Petroleum on February 1, 1985 (effective May 1, 1984), subject to the ENI-Arkla gas purchase contract. Notice of this assignment was given to Arkla.
Quinoco Petroleum assigned its interest in the FU well and other wells, on April 11, 1985 (effective May 1, 1984), to about a dozen separate limited partnership entities, which, on April 14, 1988, were merged into still another separate limited partnership entity, plaintiff Quinoco Consolidated Partners, L.P. Arkla was not notified of these assignments.
Plaintiff QMH, a limited partnership, was formed April 29, 1988, with WMH Corporation as the general partner and Quinoco Petroleum as the limited partner. On May 31, 1988 (effective April 1, 1988), Quinoco Consolidated, the several limited partnerships which had merged into it, and other separate entities, including plaintiff EM Nominee Partnership Company, a Quinoco Petroleum affiliate, assigned their respective interests in various wells, including the FU well, to QMH. The assignment was recorded in Latimer County, OK, August 15, 1988. Arkla was not notified of this assignment. Plaintiff EM Nominee owned an interest in some of the wells included in the assignment, but is not shown to have owned an interest in the FU well.
EM Nominee and Quinoco Consolidated owned interests in wells in the Bethany Longstreet Field in DeSoto Parish, LA. These wells were subject to a gas purchase contract with Arkla, referred to as the Grand Cane Contract, that was earlier executed by May Petroleum, Inc. May Petroleum had made a "take or pay" claim against Arkla under the Grand Cane Contract *1371 at some time before 1985. May and Arkla entered into a settlement agreement in October 1985. This settlement became the subject of a dispute between May and Arkla. At some point, May assigned its interest in the DeSoto Parish wells to EM Nominee and Quinoco Consolidated, both of which were affiliates of Quinoco Petroleum.

QUINOCOARKLA GRAND CANE CONTRACT SETTLEMENT NEGOTIATIONS
In June 1988, Quinoco and Arkla attempted to negotiate a settlement of Quinoco's claims under the Grand Cane Contract. Arkla desired to include in the settlement all other claims by Quinoco against Arkla. Quinoco furnished Arkla with a list of its Arkla gas purchase contract claims, which included the Grand Cane Contract, the ENI Contract and a third contract affecting the "NE Kiowa" well. The ENI Contract was involved in "take or pay" litigation in Oklahoma, brought by A.C. Black, the operator of the FU well. Quinoco participated in that Oklahoma suit, at least to the extent of paying its share of the legal fees that Black incurred.
During the Grand Cane settlement negotiations in June 1988, Quinoco's vice-president of marketing, Stan Washburn, told Arkla's representatives that Quinoco owned a 38 percent interest in the FU well, for which it would accept a certain amount in settlement. Quinoco Consolidated, however, had assigned its interest in the FU well to QMH about a month earlier.
The attempt by Quinoco and Arkla to settle the Grand Cane dispute initially proved futile. On August 29, 1988, EM Nominee and Quinoco Consolidated sued Arkla in Caddo Parish for breach of the Grand Cane Contract and of the 1985 May Petroleum settlement agreement pertaining to that contract.
In early 1989 Arkla and Quinoco reopened negotiations to settle Quinoco's pending suit on the Grand Cane Contract. The members of the respective negotiating teams had changed since the June 1988 negotiations. The Quinoco companies offered to settle their claims against Arkla under the Grand Cane Contract for a specified sum. Arkla conditionally agreed, provided that Quinoco would settle all other Arkla gas purchase contract claims in the same agreement. The settlement amount was to be increased to reflect the "all contracts waiver" after Arkla reviewed its gas purchase contract records and provided Quinoco with a list of all the contracts with Quinoco. This list of Arkla gas purchase contracts, which list was prepared by Arkla, became Exhibit A to the settlement agreement at issue here, which was eventually executed on March 1, 1989.
The ENI (FU well) Contract was not on the list or on Exhibit A. The settlement agreement provided, however:
The parties acknowledge that it is their intent to include all gas purchase contracts between Arkla as Buyer and Quinoco as Seller on the Exhibit A list and the parties will execute any additional documents that may be required to include any other such contracts that may have been omitted from the Exhibit A list.
Arkla's list, and the resulting Exhibit A to the settlement agreement, contained six contracts: the Grand Cane Contract, another DeSoto Parish contract, and four contracts covering wells in Grady, Beckham and Pittsburg Counties in Oklahoma. The ENI gas purchase contract covering the FU well was not "on the Exhibit A list" even though Arkla had been notified of the 1985 assignment from ENI to Quinoco Petroleum (but not of the subsequent assignments by Quinoco Petroleum to Quinoco Consolidated and by Quinoco Consolidated to QMH) and notwithstanding Washburn's statement in the early negotiations that Quinoco owned 38 percent of the FU well. The ENI Contract was discussed during the initial Grand Cane settlement negotiations in June 1988, as noted above, but was not mentioned in the subsequent negotiations that led to the settlement.

THE SETTLEMENT AGREEMENT
The settlement agreement eventually executed provided that Arkla would make a *1372 lump sum "recoupable" payment of the settlement amount to the Seller, and the Seller would deliver gas from the wells listed in Exhibit E without charge until the settlement amount was recouped. The Seller represented and warranted "that it is the owner of the Gross Working Interests stipulated in Exhibit E and has the right to sell and deliver to Buyer that share of gas produced represented by such Gross Working Interest without the joinder of any other person whomsoever, and it is acknowledged that the amount of the Prepayment is predicated upon this representation." Exhibit E listed wells, while Exhibit A listed gas purchase contracts.
The settlement agreement, between EM Nominee, Quinoco Petroleum and Quinoco Consolidated as "Seller," and Arkla as "Buyer," provided:
Seller hereby waives any and all claims relating to or arising out of the Contracts and the 1985 Settlement Agreement (except for routine accounting adjustments) including any failure to take gas or to pay for gas not taken by Buyer, or to make additional prepayments, and including any claims relating to or arising out of calculation of the payment due for gas actually delivered ...
Our emphasis.
The term "the Contracts," as included in the above quote, was defined in the settlement agreement, which was prepared by Arkla, as "the contracts covered by the Settlement Agreement listed on Exhibit A."
The parties acknowledged in the settlement agreement their intent to include "all gas purchase contracts between Arkla as Buyer and Quinoco as Seller on the Exhibit A list" and agreed to execute additional documents to include contracts that may have been omitted from the Exhibit A list. This provision is fully quoted supra. Our emphasis.
Exhibit E to the settlement agreement was a list of wells in which the Seller (three of the plaintiffs) owned a working interest. The FU well was not listed in Exhibit E. Among the wells listed in Exhibit E were two wells in Grady County, OK. The names of these wells, and the corresponding percentages of the Seller's gross working interest, were marked through with an X when the agreement was executed on behalf of the Seller in Denver, Colorado. Quinoco explained the deletions in its cover letter forwarding the signed agreement to Arkla: "Please note that on Exhibit E, the Pritchard # 1 and Null # 1 wells are no longer owned by any Quinoco entity, and so cannot be part of this settlement." Our emphasis.
In September 1989, six months after the settlement agreement was executed, the operator of the FU well, A.C. Black, told Arkla of Quinoco's assignment of its interest in the well to QMH. Quinoco sent Arkla written notice and a copy of the assignment to QMH in February 1990.
Plaintiffs brought this suit against Arkla on March 22, 1990, seeking a declaratory judgment that QMH's claims against Arkla arising from the ENI (FU well) Contract were not waived or released by the March 1, 1989, settlement agreement, to which QMH was not a party.
Arkla filed a reconventional demand for a judgment declaring that the claims of the four plaintiffs for breach of the ENI Contract were waived in the settlement agreement; that the ENI Contract terminated by its terms on April 1, 1987, before the assignment to QMH; and that Quinoco had not assigned to QMH its claims or causes of action against Arkla for breach of the ENI Contract.
Plaintiffs answered the reconventional demand and filed an amended and supplemental petition in which they reurged their demand for judgment declaring that the settlement agreement did not waive QMH's claims against Arkla under the ENI Contract, and sought judgment ordering Arkla to specifically perform its December 1989 letter offer to settle the claims of Quinoco or its assignees under the ENI Contract. Arkla made the letter offer subject to the condition that Quinoco present to Arkla proof that Quinoco's claims under the ENI Contract were not waived or released in the March 1989 settlement agreement.
*1373 Arkla answered the amended petition and filed a motion for summary judgment "declaring that any claims of [the four] plaintiffs for breach of the ENI Contract were waived and released by virtue of the Settlement Agreement." Plaintiffs filed a cross motion for partial summary judgment declaring that "plaintiffs have not waived or released the claims of QMH under the ENI Contract." The parties filed depositions, affidavits and other documentary evidence in support of their respective motions.
Arkla's motion for summary judgment contended that the claims of all plaintiffs, including QMH, under the ENI Contract were waived or released in the settlement agreement because the parties to the agreement intended to settle claims arising under all gas purchase contracts between Arkla and Quinoco, whether listed in Exhibit A or not; Arkla paid additional consideration for the "all contracts waiver"; and Quinoco was legally authorized to settle the claims of its assignee, QMH, under the ENI Contract because Arkla was not notified of the assignment.
Plaintiffs' cross motion for summary judgment contended that the settlement agreement did not waive or release QMH's claims against Arkla under the ENI Contract because the parties to the agreement did not intend to include that contract as part of the settlement. Plaintiffs argued that Arkla's lack of notice of the assignment to QMH was irrelevant because the additional consideration paid by Arkla for the "all contracts waiver" was based entirely on a specific evaluation of the gas purchase contracts listed in Exhibit A and did not include any amount attributable to the ENI Contract.

ARKLA'S ARGUMENTS
Arkla made these arguments in support of its motion:
(1) Oklahoma substantive law should be applied because the FU well, the site of which is the delivery point under the ENI Contract, is located in Oklahoma.
(2) Under both the ENI Contract and Oklahoma law, Arkla was not bound by the assignments of the working interest in the FU well by Quinoco Petroleum to Quinoco Consolidated, and by Quinoco Consolidated to QMH, even if they were recorded in the Oklahoma public records, because Arkla was not given written notice and a certified copy of the assignments before the settlement agreement was executed. Washburn's representation that Quinoco owned a 38 percent interest in the FU well, during settlement negotiations in June 1988, compounded the problem of lack of written notice.
(3) Arkla intended the "all contracts waiver" in the settlement agreement to include "everything that Quinoco or its affiliates had with [Arkla] ... whether it was on [Exhibit A] or not." The "all contracts waiver" by Quinoco Petroleum and Quinoco Consolidated in the settlement agreement effectively waived QMH's claims under the ENI Contract.
(4) Based on Washburn's representation and the lack of contrary notice until after the settlement agreement was executed, and on Arkla's payment of additional consideration for the "all contracts waiver," plaintiffs are equitably estopped, under Oklahoma law, from asserting that QMH's claims were not waived.

PLAINTIFFS' ARGUMENTS
Plaintiffs made these arguments to oppose Arkla's motion for summary judgment and to support their cross motion:
(1) Louisiana substantive law, rather than Oklahoma law, applies because the object of this suit is to interpret the 1989 settlement agreement, which was negotiated, drafted and agreed to by the parties in Louisiana with the assistance of Louisiana counsel, for the primary purpose of settling Caddo Parish litigation relating to gas purchases from wells in DeSoto Parish.
(2) Under CC Art. 3077, a transaction or compromise is binding on the parties, but is not binding on non-parties. Under Art. 3073, a settlement agreement regulates only the differences which the parties clearly intended to include in the agreement.
*1374 (3) Even if Quinoco had the power, under Oklahoma law, to settle QMH's claims, Quinoco did not intend to include QMH's claim under the ENI Contract in the settlement agreement. The parties stated their intent to settle "all gas purchase contracts between Arkla as Buyer and Quinoco as Seller on the Exhibit A list." Plaintiffs argued the reference to "Quinoco as Seller" meant "Quinoco as current Seller" when the settlement agreement was executed.
Plaintiffs emphasized that the ENI Contract was not included in Exhibit A, and the FU well was not included in Exhibit E, the list of wells in which the Sellers in the settlement agreement (EM Nominee, Quinoco Petroleum and Quinoco Consolidated) owned a working interest. Plaintiffs claimed this was because none of the those parties was the current Seller under the ENI Contract. Plaintiffs argued that the absence of the FU well from Exhibit E was significant because the settlement payment by Arkla was entirely recoupable, representing prepayment for gas to be delivered by EM Nominee, Quinoco Petroleum or Quinoco Consolidated in the future.
Plaintiffs acknowledged that the parties agreed to execute documents to include contracts that may have been omitted from Exhibit A, but point out that no such documents were sought or executed with respect to the ENI Contract. Plaintiffs claimed the ENI Contract could not have been added to the agreement in any event because none of the parties to the agreement owned a working interest in the FU well that was subject to that contract.
(4) The fact that Arkla was not notified of the assignment to QMH before the settlement agreement was executed is irrelevant because Arkla did not pay any consideration for Quinoco's alleged waiver of QMH's ENI Contract claims. According to the deposition testimony of Michael Gregory, one of Quinoco's representatives during the settlement negotiations, the increase in the settlement amount to include "all contracts" with Quinoco, and not just the Grand Cane Contract, was calculated based on the value of each contract listed in Exhibit A. Since the ENI Contract was not listed in Exhibit A, Arkla did not pay anything for Quinoco's alleged waiver of QMH's claims and the waiver cannot be deemed valid.
(5) Plaintiffs are not estopped, under Louisiana law, from denying that the settlement agreement waived QMH's claims under the ENI Contract, based either on Washburn's 1988 statement that Quinoco owned a 38 percent interest in the FU well, or on the lack of notice of the assignment to QMH, because Arkla has not shown that it relied on the representation or the lack of notice, or that it detrimentally changed its position based on any such reliance.

RESOLUTION
Choice of law is the threshold issue. Arkla's position, which the trial court apparently adopted, is that Oklahoma law should apply because the FU well, the site of which is the delivery point under the ENI Contract, is in Oklahoma. Although portions of that contract (such as the requirement that Arkla be given written notice of assignments by the gas seller) may ultimately play a part in the resolution of this dispute, the contract that the parties seek to have interpreted in this action is the 1989 Louisiana settlement agreement. The primary purpose of that agreement was to settle Louisiana litigation brought against Arkla for breach of the Grand Cane Contract, a gas purchase contract affecting Louisiana wells. The agreement was prepared by Arkla in Shreveport, Louisiana, after negotiation meetings were held in Quinoco's Colorado office and in the New Orleans office of Quinoco's Louisiana counsel.
Louisiana has a more significant relationship to the transaction and the parties, and a greater interest in applying its law to the interpretation of the Louisiana settlement agreement, than does Oklahoma. See and compare Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976), writs denied, and Wilkins v. State, DOTD, 526 So.2d 308 (La.App. 3d Cir.1988). See also CC Art. 3537, effective January 1, 1992.
Under Louisiana law, settlement or compromise agreements "regulate only *1375 the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them." CC Art. 3073. The intent of the parties is determined by construing the agreement as a whole and in the light of the events and circumstances surrounding the execution of the contract. Succession of Magnani, 450 So.2d 972 (La. App. 2d Cir.1984). Generally, when the parties dispute what matters they intended to compromise, there exists a genuine issue of material fact which precludes summary judgment. Hall v. Management Recruiters of New Orleans, Inc., supra; Lavalais v. Allen, supra.
We observe, however superfluously, that the parties seriously dispute, here and below, what they intended to settle in their 1989 agreement. Each argues that the contractual language and the surrounding circumstances support its respective and divergent interpretation of the agreement.
The trial court, in granting summary judgment in Arkla's favor, implicitly found that the claims of the four plaintiffs for breach of the ENI Contract were waived in the settlement agreement. Plaintiffs ask that we reverse that judgment and grant summary judgment declaring that QMH's claims under the ENI Contract were not waived in the settlement agreement.
The issue whether the three plaintiffs who were parties to the agreement waived any claims that they may have had under the ENI Contract is purely factual and is determined by the intent of the parties to the agreement. The issue whether those plaintiffs waived the claims of the fourth plaintiff, QMH, perhaps a separate entity who obviously was not a party to the settlement agreement, presents both a question of fact (did the Quinoco parties intend to waive any claims under the ENI Contract?) and a question of law (could the Quinoco parties have validly waived those claims on behalf of their assignee, QMH, who was not a party to the settlement agreement?).
Because the intent of the contracting parties is a disputed issue of material fact, we find that neither party is entitled to summary judgment. We express no opinion on the legal issue whether the Quinoco parties could have validly waived QMH's claims under the ENI Contract if, in fact, the Quinoco parties are found to have "intended" to do so.

DECREE
We reverse the summary judgment in favor of Arkla. We affirm the denial of plaintiffs' cross motion for summary judgment. Costs of the appeal are assessed one-half to plaintiffs and one-half to Arkla.
REVERSED AND REMANDED.