REVISED JULY 1, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-31254
_____

JAMES YOUNG,

Plaintiff-Appellant,

versus

EQUIFAX CREDIT INFORMATION
SERVICES INC; ET AL,

Defendants,

EQUIFAX CREDIT INFORMATION SERVICES
INC; J C PENNEY CO., INC.; CREDIT
BUREAU OF LAKE CHARLES INC,

Defendants-Appellees.
_____

JAMES YOUNG,

Plaintiff-Appellant,

versus

CREDIT BUREAU OF LAKE CHARLES
INC; EQUIFAX CREDIT INFORMATION
SERVICES INC; J C PENNY CO, INC,

                                    Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Western District of Louisiana

—————————————
June 11, 2002

Before GARWOOD, WIENER, and CLEMENT,[1] Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant James Young (Young) appeals the dismissal on summary judgment of his action against defendants-appellees J.C. Penney Co. (Penney), Equifax Credit Information Services, Inc. (Equifax), and Credit Bureau of Lake Charles (CBLC). We affirm in part and vacate and remand in part.

**Facts and Proceedings Below**

Young contends that the defendants injured him by publishing defamatory credit information concerning a Penney department store charge account (the Penney account) that another person fraudulently opened in his name. On January 27, 1999, Young filed suit against the defendants in the 9th Judicial District Court for the Parish of Rapides, Louisiana alleging breaches of earlier

---

[1]Judge Edith Brown Clement participated by designation in the oral argument of this case as a United States District Judge for the Eastern District of Louisiana. Since that time she has been appointed as a Fifth Circuit Judge.

settlement agreements and new torts, including violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 - 1681u.

Young alleges that Pamela Odom (Odom), who was formerly Young's live-in girlfriend and who is the mother of Young's minor daughter, opened the joint charge account in Young's name without his consent in 1992. The Penney account became delinquent and the delinquency appeared on Young's credit report. Penney allegedly reported information concerning the delinquent account to CBLC and Equifax. CBLC and Equifax are affiliated entities that share a common credit reporting database and issue consumer credit reports to potential creditors. Young alleges he was denied credit based on the information about the Penney account that appeared on credit reports issued by CBLC and Equifax. Young disputed the Penney account with each of the defendants.

Odom allegedly opened other fraudulent accounts in Young's name with other creditors; these accounts are not at issue in the present case. In 1996, Young filed a suit in state court (*Young I*) against the current defendants and several others in regard to the various disputed accounts, including the Penney account. In September 1997, Young settled his claims against Penney, Equifax, and CBLC, and the court dismissed his claims against those defendants with prejudice. At that time, Young executed releases evidencing the settlement.

The relevant language of the release to Penney (the Penney

3

Release) provided:

> James Young releases, acquits, discharges, and covenants to hold harmless J.C. Penny [sic] Co., Inc. . . . . from any and all actions, causes of action, . . . and claims of every type, and also any injuries or damages not now known or which may later develop, all resulting from the alleged theft of his identity relative to the allegedly erroneous and/or fraudulent extension of credit in his name and all other claims as are more particularly described in that certain suit styled [*Young I*] on the docket of the Ninth Judicial District Court, State of Louisiana, bearing Civil Docket Number 186,314.

The relevant language of the release to Equifax and CBLC (the Equifax/CBLC Release) provided as follows:

> [Young] does hereby release, acquit and forever discharge Credit Bureau of Lake Charles, Inc. and Equifax Credit Information Services, their agents, employees, insurers, successors, assigns and attorneys, of and from any and all actions or cause of action whatever, which he now has or may hereafter have arising out of the occurrence as set forth in the above mentioned suit, including all claims for costs, expenses, loss of earnings, pecuniary and non-pecuniary damages, compensatory damages, punitive and exemplary damages and damages of any nature whatsoever.

> APPEARER AGREES this release includes all claims asserted against Credit Bureau of Lake Charles, Inc. and Equifax Credit Information Services in the above mentioned suit and authorizes his attorney to dismiss those claims with prejudice.

In consideration for these releases, each of the defendants paid Young a sum of money.

Young filed the present suit (*Young II*) in state court in January 1999, alleging that after the above settlement and releases the defendants continued to report the Penney account data, in violation of the settlement agreements, the FCRA, and

4

state tort law.  Young's complaint contended that the settlement agreements included an agreement that the defendants would remove the Penney account data from Young's credit file.  Young alleged that he was denied credit from other potential creditors because of the continued reporting, after *Young I* was settled, of the Penney account data.  The defendants removed *Young II* to the United States District Court for the Western District of Louisiana on February 25, 1999.

On August 10, 2000, the district court entered judgment for Penney pursuant to Penney's Motion for Summary Judgment/Exception of Res Judicata and dismissed Young's claims against Penney with prejudice.  The court found that the *Young I* settlement agreement imposed no obligation on Penney to clear its credit records of the offending information.  Young filed a motion for reconsideration, or, in the alternative, to amend the judgment to dismiss only his claim for breach of the settlement agreement.  Young argued that, just before the district court entered its order, Equifax's designee, Janet Mullins, testified in a deposition that Penney had reported the Penney account information to Equifax in July 1998, ten months after the *Young I* settlement.  Young contended that Mullins's deposition evidence established a *prima facie* case for the new defamation alleged in *Young II*.  The district court denied the motion because the deposition did not add any information previously unavailable and

5

also failed to establish the elements of defamation. Within thirty days, Young filed a notice of appeal from the grant of summary judgment and the denial of the motion for reconsideration.[2]

On November 7, 2000, the district court granted summary judgement for Equifax and CBLC. The court again stressed that the plain language of the settlement agreement did not require that Equifax and CBLC delete the Penney account information or otherwise modify Young's credit records. The court held that the claims were barred as *res judicata* because, although the Penney account information had since been reported repeatedly, it was the same information that was at issue in *Young I*. Thus, Young's new claims arose from the same occurrence set out in the first suit and were barred by the settlement agreement. Young could have negotiated for removal of the offending information in the *Young I* settlement agreement, but did not do so. Young filed a timely notice of appeal from the grant of summary judgment to

_____

[2]Young's notice of appeal of the summary judgment in favor of Penney was technically premature; the district court's order was not a final judgment because it neither disposed of the claims against all the defendants nor was it certified as a final judgment pursuant to Fed. R. Civ. P. 54(b). *See Riley v. Wooten*, 999 F.2d 802, 804 (5th Cir. 1993). However, because the order would have been appealable if the district court had certified it pursuant to Rule 54(b) and because the district court did subsequently (and prior to oral argument herein) dispose of all remaining parties and claims, this court has jurisdiction over the appeal of the summary judgment in favor of Penney. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 379 (5th Cir. 1996).

6

Equifax and CBLC.

## Discussion

I. Standard of Review

This court reviews a district court's grant of summary judgment *de novo*. *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986). Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial. *Id*. at 2552-53.

II. *Res Judicata*

Because *Young I* was in state court, the settlement of that suit has the same preclusive effect it would have under Louisiana law. *Marnese v. Amer. Acad. of Orthopaedic Surgeons*, 105 S.Ct.

7

1327, 1331 – 32 (1985); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000). The Louisiana Code provision governing *res judicata* is La. Rev. St. § 13:4231:

4231. Res judicata

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

A "*transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner upon which they agree and which every one of them prefers to the hope of gaining, balanced by the danger of losing." La. Civ. Code Ann. art. 3071. For *res judicata* purposes, "[t]ransactions have, between the interested parties, a force equal to the authority of things adjudged." La. Civ. Code Ann. art. 3078.

8

The Penney account data at issue in the instant case is the same as that at issue in *Young I* and *res judicata* would clearly bar a subsequent action based on the publications of that data occurring before final judgment was rendered in *Young I*. *See* La. Rev. St. § 13:4231. But *res judicata* is not a *per se* bar to the present suit, which is based on publications occurring after final judgment was entered in *Young I*. To be barred under the plain language of Louisiana's *res judicata* statute, a cause of action must have existed "at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation." *Id.* A plaintiff cannot state a cause of action until he can identify "both a wrongful act and resultant damages." *Guitreau v. Kucharchuk*, 763 So. 2d 575, 580 (La. 2000). Under the Louisiana law of defamation, each subsequent publication of a defamatory statement is a new and separate delictual cause of action. *Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 790 So. 2d 725, 730 (La. App. 5 Cir. 2001); *Wiggins v. Creary*, 475 So. 2d 780, 781 (La. App. 1 Cir. 1985), *writ denied*, 478 So. 2d 910 (La. 1985); *Neyrey v. Lebrun*, 390 So. 2d 722, 725 (La. App. 4 Cir. 1975). We have adopted a similar rule in our interpretation of the FCRA; the republication of credit information resulting in a new denial of credit constitutes a distinct harm and thus gives rise to a cause of action that is separate from that arising from the original publication. *Hyde*

9

*v. Hibernia Nat. Bank*, 861 F.2d 446, 450 (5th Cir. 1988).

Young's current causes of action did not exist at the time final judgment was entered in *Young I*. Young alleges new wrongful acts, i.e., new publications of the Penney account data, resulting in new damages, i.e., new denials of credit. Therefore, the *Young I* compromises are only a bar to the present suit if they comprehended future claims arising from future republications. *See* La. Civ. Code art. 3073.

III. Principles of Interpretation

A transaction or compromise is a written contract and it is construed according to the same general rules applicable to contracts. *Brown v. Drillers, Inc.*, 630 So. 2d 741,748 (La. 1994). As a general rule of construction, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *see also Brown*, 630 So.2d at 748. A supplementary rule of construction governs the interpretation of a compromise agreement; La. Civ. Code art. 3073 provides:

> Transactions regulate only the differences which appear
> clearly to be comprehended in them by the intention of
> the parties, whether it be explained in a general or
> particular manner, unless it be the necessary
> consequence of what is expressed; and they do not
> extend to differences which the parties never intended
> to include in them.

La. Civ. Code art. 3073.

10

In determining the preclusive effects of the compromise agreements in this case, we look to Louisiana law. *See St. Paul Mercury Ins. Co.*, *supra*. In *Brown*, the Louisiana Supreme Court considered whether a compromise entered into by an injured worker and his wife precluded the widow's subsequent wrongful death suit against the employer. Applying the principles discussed above, the *Brown* court held that the compromise did not, as a matter of law, cover the widow's wrongful death suit. *Brown*, *supra* at 758. The release agreement in *Brown* contained general recitals purporting to release the defendants from liability on any claims arising "on account of or relating in any way to injuries suffered by Buel Brown on or about [the date of the claimed tort]." *Id.* at 752. Although the widow's wrongful death claim alleged that her husband's death resulted from the same injury at issue in the compromise, the court found that this separate, future wrong was not within the scope of the differences that the parties intended to settle by the compromise. *Id.* at 757.

The Louisiana courts appear reluctant to construe a compromise agreement broadly, especially with regard to future claims: "[R]eleases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not

11

to cover such future action." *Id.* at 753.  Further, the party interposing a release instrument to support an exception of *res judicata* bears the burden of proof "to establish the requisites for a valid compromise, including the parties' intent to settle the differences being asserted in the action in which it is interposed."  *Id.* at 747.

IV. The Equifax/CBLC Release

Applying these principles of construction to the Equifax/CBLC Release, we conclude that it does not preclude Young's present suit as a matter of law.  That release purported to settle all claims "which [Young] now has or may hereafter have arising out of the occurrence as set forth in the above mentioned suit [i.e., *Young I*]."  Both *Young I* and the present suit involved publication of the same Penney account information.  However, as explained above, the occurrences that give rise to Young's presently existing causes of action include the new publications and the damages resulting from *them*.  These new claims did not exist at the time the Equifax/CBLC Release was executed and there is at least ambiguity as to whether they arise from the same "occurrence as set forth in" *Young I*.[3]  The plain

---

[3]Equifax and CBLC direct our attention to *Martens v. Davis*, No. Civ. A. 97-2997, 1998 WL 240411 (E.D. La. May 12, 1998) (holding that a compromise agreement barred subsequent defamation claims for publication of the same material).  Even if *Martens* were controlling precedent, that case is distinguishable.  In *Martens*, the allegedly defamatory material had been published *before* the compromise was executed; indeed, that publication took place

12

language of the release suggests that only the then-existing causes of action were compromised, and this would not be an absurd consequence. *Cf.* La. Civ. Code art. 2046. The settlement *did* encompass future harm resulting from the original publications, but did not unambiguously comprehend future repetition of the libel. That is, it did not unambiguously preclude Young from suing again when repetition of the libel causes new damages and, thus, a new cause of action accrues. The release was a matter on which Equifax and CBLC would have had the burden of proof at trial. Under the Louisiana law of compromise interpretation, a genuine issue of material fact regarding what the parties intended to compromise precludes summary judgment. *EM Nominee P'ship Co. v. Arkla Energy Res.*, 615 So.2d 1369, 1375 (La. App. 2 Cir. 1993). Accordingly, the district court erred in rendering summary judgment that the claims against Equifax and CBLC were barred by the earlier release; there was at least an issue of fact in that respect.

V. The Penney Claims

The language of the Penney Release is arguably broader than that of the Equifax/CBLC Release. Rather than releasing only those claims arising from the "occurrence" set forth in *Young I*, it purports to release Penney of liability "from any and all

---

earlier than the publication that the plaintiff sued over in his first lawsuit. *Id.* at *3. We do not disagree with *Martens*.

13

actions, causes of action, . . . all resulting from the alleged theft of his identity relative to the allegedly erroneous and/or fraudulent extension of credit in [Young's] name." It is not clear that this language is broader than that at issue in *Brown*, which purported to release all claims arising from the decedent's accident but was held not to preclude the widow's wrongful death action arising from that accident. However, we affirm the summary judgment in favor of Penney because, as explained below, Young has failed to identify competent evidence to support necessary elements of his claims.

The FCRA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves "malice or willful intent to injure" him. 15 U.S.C. § 1681h(e); *see also Cushman v. Trans Union Corp.*, 115 F.3d 220, 229 (3d Cir. 1997); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069 (9th Cir. 1992); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980). Young has pointed to no evidence supporting an inference that Penney reported information with malice or willful intent toward him.

Even if Young's state law claims are not preempted, he has failed to present competent evidence regarding at least two elements of a defamation claim. In Louisiana, the elements of a defamation action are "(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting

14

injury." *Cangelosi v. Schegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980). As we noted above, Young has not produced competent evidence of malice. Further, he has not produced competent evidence that Penney republished the Penney account information to Equifax and CBLC after the *Young I* settlement.

As evidence of the republication, Young points first to the deposition of Equifax representative Janet Mullins. We note that this deposition was not taken until after Young responded to Penney's motion for summary judgment and may not be properly part of the Penney case summary judgment record. Even if it is properly considered, the deposition does not support Young's contention. Mullins testified that an Equifax "snapshot"[4] showed that Equifax had deleted the Penney account information from Young's credit file in July 1998 and went on to state that the "snapshot" "says [the Penney account information was] reported July of '98". Mullins did not specify who did the reporting or to whom the report was made.[5] Young next points to his own

---

[4]A "snapshot" or "frozen data report" is a computer printout that summarizes the status of a consumer's credit file at a given point in time. It reflects the data that the credit reporting agency has received and reports to potential creditors.

[5]The "snapshot" does not state that Penney transmitted the Penney account data to Equifax after the September 1997 *Young I* settlement and Mullins did not testify that the "snapshot" indicated such a transmission. Although it can be inferred that Penney initially reported the data to Equifax, nothing supports the inference that the July 1998 "snapshot" reflected a *new* publication

15

affidavit, which says that Penney continued to report the allegedly fraudulent information. Conclusory affidavits are not sufficient to defeat a motion for summary judgment. *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Young also directs us to the deposition of Penney representative Elaine Underwood. When Young's counsel asked Underwood if she could "refute Ms. Mullins' testimony that J.C. Penney reported its account in July of 1998 to Equifax," Underwood said that she could not. As we have noted, Mullins did *not* actually testify that Penney reported the account information. In any event, Underwood's inability to either confirm or deny this ultimate issue of fact is not probative.

Young has abandoned his breach of contract claim. Therefore, Young's claims arising under the FCRA are all that remain against Penney.

Penney argues that Young does not have a private right of action under FCRA because Penney is a "furnisher of information" rather than a "consumer reporting agency." We do not ultimately resolve this argument. 15 U.S.C. §§ 1681n and 1681o impose civil liability on "any person" violating duties under FCRA. 15 U.S.C. §§ 1681n, 1681o. Section 1681s-2(b) imposes duties on furnishers of information to, *inter alia*, investigate disputed

_____

of that data. It is just as likely that Equifax simply retained the previously reported data in its database.

16

information and report the results of any such investigation to the consumer reporting agency.   15 U.S.C. § 1681s-2(b).   The plain language of FCRA thus appears to impose civil liability on "any person" violating a FCRA duty unless some exception applies. Section 1681s-2(c) does provide an exception to civil liability for failure to comply with Section 1681s-2(a) (prohibiting reporting of inaccurate information), 15 U.S.C. § 1681s-2(c), and Section 1681s-2(d) provides that enforcement of Section 1681s-2(a) shall be by government officials, 15 U.S.C. § 1681s-2(d). Nothing in these sections precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s-2(b).  We need not decide, and do not decide, whether a private right of action exists against a furnisher of information because, as we explain below, Young has not established an element that would be required if any such action does exist.  We observe – without approving or disapproving the holding – that the only circuit court that has decided this issue held that there is a private right of action.  *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002).

However, the FCRA establishes a duty for a consumer reporting agency (like Equifax or CBLC) to give notice of a dispute to a furnisher of information (like Penney) within five business days from the time the consumer notifies the consumer reporting agency of the dispute.  15 U.S.C. § 1681i(a)(2).  Such

17

notice is necessary to trigger the furnisher's duties under Section 1681s-2(b). 15 U.S.C. § 1681s-2(b)(1) ("*After* receiving notice pursuant to [section 1681i(a)(2)] of this title of a dispute . . . ." (emphasis added)). Thus, any private right of action Young may have under § 1681s-2(b) would require proof that a *consumer reporting agency*, like Equifax or CBLC, had notified Penney pursuant to § 1681i(a)(2). *See* 15 U.S.C. § 1681s-2(b) (cross-referencing § 1681i(a)(2) and establishing duties of furnishers of information arising upon notice of a dispute); *see also Nelson*, at 1060. Young points to no evidence tending to prove that Penney received notice of a dispute from a consumer reporting agency within five days, as is required to trigger Penney's duties under Section 1681s-2(b).[6] Because Young has not satisfied the notice element with respect to Penney, his FCRA claims fail as a matter of law.

## Conclusion

Because we hold that the district court erred in granting summary judgment that the Equifax/CBLC Release precludes Young's present claims, we VACATE the judgment in favor of defendants Equifax and CBLC and REMAND Young's claims against those defendants for further proceedings not inconsistent with this

---

[6]In her deposition, Mullins did report contacting Penney regarding the Penney account dispute in June 1997. Because Young first disputed the Penney account information no later than 1996, this contact clearly would not satisfy Section 1681i(a)(2)'s five-day provision.

opinion.  With regard to Penney, Young has not proffered competent evidence of the elements necessary for going forward with his state law claims.  As to the FCRA claims, Young has not pleaded nor proffered evidence that Penney received the notice pursuant to Section 1681i(a)(2) that would give rise to duties under Section 1681s-2(b).  Therefore, we AFFIRM the judgment of the district court in favor of Penney.

AFFIRMED in part; VACATED and REMANDED in part.