**Affirmed and Memorandum Opinion filed June 8, 2023**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00596-CV

### ROBERT PAUL MUIR AND SHARON C. MUIR, Appellants

### V.

### U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST BOA LEGACY 2018, AND SELECT PORTFOLIO SERVICING, INC., Appellees

**On Appeal from the 434th Judicial District Court
Fort Bend County, Texas
Trial Court Cause No. 20-DCV-278486**

## MEMORANDUM OPINION

Appellant Robert Paul Muir, appearing individually and as the representative of the Estate of Sharon C. Muir, deceased, appeals the final judgment authorizing foreclosure of a Texas Home Equity Lien. Finding no error, we affirm.

### BACKGROUND

In 2007 the Muirs entered into a "Texas Home Equity Note" in the principal

amount of $760,000. Among other provisions, the Note provided that "the Lender may transfer the Note." The Note also provided that the Muirs' home (the "Property") was "subject to the lien of the Security Instrument executed concurrently herewith." The "Texas Home Equity Security Instrument" (Deed of Trust) signed by the Muirs placed a "fully enforceable lien" on the Property. The Deed of Trust provided that the "lien evidenced by [the Deed of Trust] may be foreclosed upon only by a court order."

It is undisputed that the Muirs fell behind on their Note payments. Muir himself testified that he stopped making payments in April or May, 2015. Initially, the Muirs tried selling the Property, but their efforts were unsuccessful. At that point, the Muirs began negotiations with New York Community Bank (NYCB), the Note holder at that time. The negotiations resulted in the Muirs executing a letter agreement with NYCB on January 18, 2017. In the letter agreement, in exchange for NYCB accepting a deed in lieu of foreclosure, the Muirs agreed, among other things, to vacate their home and keep the payments to the homeowner's association current. The Muirs signed a Warranty Deed in Lieu of Foreclosure (Warranty Deed) on January 29, 2017. The notary seal, however, was dated January 27, 2017. NYCB executed the Warranty Deed on March 16, 2017. The Warranty Deed provided, among other things, that

> Grantor [the Muirs], in consideration of the cancellation and extinguishment (the Obligations) of the unpaid balance on the Note and for other valuable consideration, grants, sells, and conveys to Grantee the property . . . to have and to hold it to Grantee, Grantee's heirs, executors, administrators, successors, and assigns forever. . . .
>
> Grantor and Grantee agree to the following:
>
> 1. This Warranty Deed and the conveyances being made by it are being executed, delivered, and accepted in lieu of foreclosure and will be interpreted and construed as a foreclosure of the Liens (defined below) and as an absolute conveyance to Grantee of all right, title, and

interest in the Property, including specifically but without limitation any equity or rights of redemption of Grantor or others in or to the Property.

2. Notwithstanding the cancellation of the Obligations and any provision of this Warranty Deed, the liens and security interests (the Liens) that evidence or secure the payment of the Note, including without limitation the lien and security interest of the deed of trust, . . . are not released or relinquished but will remain valid, continuous, and in full force and effect until released by written instrument (the Release) executed by Grantee and recorded in the official Real Property Records of Fort Bend County, Texas. The Release may be made at Grantee's sole discretion.

3. Neither Grantor nor Grantee intend there to be, and there will not be, a merger of any of the Liens with the title or other interest of Grantee by virtue of the conveyance. The parties expressly provide that each interest in the Liens will remain separate and distinct from the title to the Property.

4. The title and other interest of the Grantee in the Property under this Warranty Deed will not merge with the Liens. For the purpose of priority between intervening or inferior liens, claims, or encumbrances on or against the Property and the Liens, all rights of Grantee to exercise its remedies of foreclosure by private power of sale or by judicial foreclosure of any of the Liens or any other remedies are expressly preserved . . . .

. . . .

7. This conveyance and the warranty of title contained therein are additionally made and accepted subject to the matters set forth in Exhibit B[, the Deed of Trust,] attached hereto, to the extent that they still affect the Property.

The Muirs vacated the Property. NYCB tried to record the Warranty Deed, but the Fort Bend County Property Records office rejected the filing due to "issues related to the legibility of the notary seal." It is undisputed that NYCB never filed a release of the lien in the Fort Bend County Property Records.

Muir's wife passed away on April 24, 2017. According to Muir, NYCB

3

informed him of the filing problem and asked the Muirs to re-execute the Warranty Deed. At that point, Muir notified NYCB of his wife's death. In a subsequent email, NYCB told Muir that, as a result of his wife's death, the Warranty Deed would "no longer be a possible route and can no longer be re-executed."

The Deed of Trust was eventually assigned to appellee U.S. Bank Trust National Association, not in its individual capacity but solely as Collateral Trust Trustee of FirstKey Master Funding 2021-A Collateral Trust, the successor in interest to U.S. Bank Trust National Association, as trustee for TOWD POINT MASTER FUNDING TRUST BOA Legacy 2018 (U.S. Bank). Appellee Select Portfolio Servicing, Inc. (SPS) took over as the mortgage servicing company. SPS has a power of attorney to act on behalf of U.S. Bank.

Between 2017 and 2019, Muir continued paying the electricity, gas, water, and home warranty bills for his vacated home. Muir apparently did not continue to pay his homeowner's association fees because, in 2019, the homeowner's association of Muir's neighborhood sued Muir for payment of past due fees. At this point, "Muir began contacting SPS to sort out the issue with the" Warranty Deed. Muir alleged that SPS told him it would go forward with the Warranty Deed but in the meantime the title to the Property needed to remain clear. Muir alleged that he settled the dispute with his homeowner's association and then recorded affidavits of heirship in the Fort Bend County Property Records in September 2019. A year later SPS sent Muir a letter notifying him that SPS would not be able "to approve your request for assistance involving a Deed in Lieu." The letter continued that SPS "determined that we are unable to assist you in this proposed arrangement because pursuant to the servicing agreement governing this account, the owner of your mortgage has a right of approval and has denied this option based on a business decision." At this point, Muir unilaterally filed the previously

4

executed Warranty Deed in the Fort Bend County Property Records. Muir took this action even though the Warranty Deed still referred to NYCB as the grantee and Muir's deceased wife as a grantor. It is undisputed that a release of lien was never filed in the Fort Bend County Property Records.

Soon thereafter, U.S. Bank filed suit against Muir seeking, among other relief, a judicial foreclosure on the Property. Muir filed an answer and asserted counterclaims against U.S. Bank. Muir also filed a third-party claim against SPS. Eventually, both sides moved for summary judgment. The trial court initially denied Muir's motion. The trial court then signed a final judgment granting appellees' motion without specifying the grounds. The final judgment also includes an order authorizing foreclosure of the Property. The final judgment further provides that it "serves as an *in rem* Judgment and Declaration of this Court Authorizing Foreclosure of the subject Texas Home Equity Lien in accordance with TEX. CONST. ART. XVI §50(a)(6)(D)." The trial court denied an award of attorney's fees by crossing out the paragraph of the proposed final judgment that would have awarded appellees their attorney's fees. The trial court also dismissed Muir's causes of action with prejudice. This appeal followed.

## ANALYSIS

Muir challenges the trial court's final judgment in four issues. Muir argues in his first issue that the trial court erred when it did not grant his motion for summary judgment seeking declaratory relief because, in Muir's view, the 2017 Agreement and the Warranty Deed transferred title to the Property and extinguished U.S. Bank's lien on the Property. In his second issue, Muir asserts that the trial court erred when it granted U.S. Bank's motion for summary judgment seeking foreclosure. In his third issue, Muir contends that the trial court erred when it granted U.S. Bank's motion because his summary judgment evidence

5

created a fact issue on his estoppel by deed affirmative defense. Finally, in his fourth issue, Muir argues that the trial court erred when it granted U.S. Bank's motion for summary judgment on his claims seeking damages because U.S. Bank did not meet its summary judgment burden on each claim. Because Muir's first three issues turn on the same facts and law, we address them together. We then address his final issue.

## I.     Standard of review

We review a trial court's order granting summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, the appellate court reviews both motions and determines all questions presented. *Id.* The reviewing court should then render the judgment that the trial court should have rendered, or reverse and remand if neither party met its summary judgment burden. *Id.*

When a party moves for summary judgment on both traditional and no-evidence grounds, we ordinarily address the no-evidence grounds first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court grants summary judgment without specifying the grounds, we affirm the judgment if any of the grounds presented are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material

fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). We consider all of the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See id.*; *Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). A no-evidence summary judgment will be sustained when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pled and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

In construing a written contract, an appellate court's primary goal is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When construing a contract, we give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.

7

2005). We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Tenneco, Inc. v. Enterprise Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). In other words, courts cannot make, or remake, contracts for the parties. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998). That is because it is not a court's role to protect the parties from their own agreements. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015).

## II. The trial court did not err when it denied Muir's motion for summary judgment and granted appellees' motion.

In his first issue on appeal Muir complains that the trial court erred when it denied his motion for summary judgment seeking a judgment declaring that the Warranty Deed was a complete and final conveyance of all right, title, and interest in the Property to appellees, and that the Warranty Deed extinguished the lien on the Property. In his second and third issues Muir argues that the trial court erred when it granted appellees' motion for summary judgment because he (1) proved there was no debt secured by a lien after the Warranty Deed was executed, and (2) raised a fact issue on each element of his estoppel by deed affirmative defense. In summary, Muir argues that the Letter Agreement and the Warranty Deed "were fully performed" which extinguished the debt leaving "no remaining loan balance or lien under which appellees could have executed foreclosure." Appellees respond that the trial court did not err because, even if the Warranty Deed had been fully executed and subsequently recorded in the Fort Bend County Property Records, appellees had the authority to foreclose under Texas law and the

8

provisions of the Warranty Deed itself. We agree with appellees.

The undisputed facts in this appeal reveal that the Muirs began having financial difficulties and determined they would no longer be able to make the payments on their home-equity loan. The Muirs began negotiations with the holder of the note at that time, NYCB, to extricate themselves from the note obligation. The result of these negotiations was the Letter Agreement which required the Muirs to sign the Warranty Deed and vacate the property. Once the Muirs executed the Warranty Deed, the Letter Agreement merged into the Warranty Deed, which then controls the rights of the parties. *See Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 211 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("The merger doctrine requires courts to look to the deed alone in evaluating the parties' respective rights even if the terms of the deed vary from the contract."). Under the plain language of the Warranty Deed, the appellees' liens were "not released or relinquished but will remain valid, continuous, and in full force and effect until released by written instrument (the Release) executed by Grantee and recorded in the official Real Property Records of Fort Bend County, Texas." Further, the Release could be made "at Grantee's sole discretion." It is undisputed that appellees never filed a Release in the Fort Bend County Property Records.

In their motion for summary judgment appellees argued that, under these undisputed facts, foreclosure was permitted both by statute and the terms of the Warranty Deed. We turn to the statute first. Section 51.006 of the Texas Property Code is titled "Deed-of-Trust Foreclosure After Deed in Lieu of Foreclosure." Tex. Prop. Code Ann. § 51.006. It provides, in pertinent part:

> (a) This section applies to a holder of a debt under a deed of trust who accepts from the debtor a deed conveying real property subject to the deed of trust in satisfaction of the debt.

. . . .

> (e) If a holder accepts a deed in lieu of foreclosure, the holder may foreclose its deed of trust as provided in said deed of trust without electing to void the deed. The priority of such deed of trust shall not be affected or impaired by the deed in lieu of foreclosure.

*Id.*

This statute applies exactly to the factual situation presented in this appeal. Here, a lender, NYCB, U.S. Bank's predecessor, accepted a deed in lieu of foreclosure which conveyed real property, as Muir alleges, in satisfaction of a debt, as Muir also alleges. *Id.* The statute then expressly authorizes a lender, such as U.S. Bank, to "foreclose its deed of trust as provided in said deed of trust without electing to void the deed," which is exactly what appellees did here. *Id.*; *See BankDirect Capital Finance, LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 80 (Tex. 2017) (stating that where statutory text is clear, it is determinative).

Muir responds to appellees' statutory argument in his reply brief. Initially, Muir asserts that appellees did not plead subsection 51.006(e) as a basis for foreclosure. An examination of the record reveals otherwise. In paragraph 17 of its live pleading, U.S. Bank alleged it was "entitled to an order authorizing foreclosure or an order for judicial foreclosure as a matter of law. [U.S. Bank] further seeks [a] declaration that the [Warranty Deed] recognizes [U.S. Bank's] right to foreclose in conjunction with Texas Property Code [subsection] 51.006(e)."

Muir next argues that subsection 51.006(e) does not apply here because a different subsection, 51.006(b), applies only in those limited circumstances where there are undisclosed liens or encumbrances on the property. *See* Tex. Prop. Code Ann. § 51.006(b) (providing that a holder of a debt may void a deed conveying real property in satisfaction of the debt if "the debtor fails to disclose to the holder of

the debt a lien or other encumbrance on the property before executing the deed conveying the property to the holder of the debt in satisfaction of the debt"). We need not address subsection 51.006(b) because there were no allegations of undisclosed liens. We conclude appellees had the statutory authority to foreclose on the Property. *See* Tex. Prop. Code Ann. § 51.006(e).

The Warranty Deed also authorizes appellees to foreclose on the Property under the circumstances present here. Under the terms of the Warranty Deed, the Deed of Trust would remain valid until it was released by a subsequent written instrument executed by U. S. Bank and then filed in the Fort Bend County Property Records. It is undisputed this did not happen. As a result, appellees retained the contractual right to seek a judicial foreclosure of the Property.

Muir's public policy argument does not change this result. Muir argues that allowing foreclosure after a warranty deed in lieu of foreclosure violates public policy. We disagree because the Legislature determines the public policy of Texas through the statutes it passes. *Fairfield Ins. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008). As such, section 51.006(e) of the Texas Property Code, which allows lenders to foreclose under the circumstances present here, is an expression of Texas public policy.

Muir's estoppel by deed argument also fails. Muir argues this provision of the Warranty Deed functions as a recital: "Grantor, in consideration of the cancellation and extinguishment (the Obligations) of the unpaid balance on the Note and for other valuable consideration, grants, sells, and conveys to Grantee the [P]roperty . . ." Regardless of whether the cited clause of the Warranty Deed functions as a recital, we still conclude that the estoppel by deed doctrine does not preclude appellees from foreclosing.

A recital is a "formal statement or setting forth of some matter of fact, in any

11

deed or writing, in order to explain the reasons upon which the transaction is founded." *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Under the estoppel by deed doctrine, the parties to a valid deed and those claiming under them are bound, as between themselves, by the provisions of the deed, including the granting clause, recitals, reservations, and exceptions in the deed. *See Greene v. White*, 153 S.W.2d 575, 583 (Tex. 1941). Appellees have not denied the truth of any recitals and have not taken a position inconsistent with the granting language contained in the Warranty Deed. Instead, appellees sought to enforce their contractual and statutory rights to foreclose as discussed above. *See id.* ("The recitals in the deed that the vendor's lien is retained to secure payment of notes executed by Garrett are contractual."); *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956) ("The parties to the Greene-Garrett deed are bound by the terms of their contract and cannot repudiate them."); *Armour Pipe Line Co. v. Sandel Energy, Inc.*, No. 14-20-00412-CV, 2023 WL 3470426, at *9 (Tex. App.—Houston [14th Dist.] May 16, 2023 (op. on rehearing) ("Under the *Greene* precedent, the reservation of the Royalty was contractual, and the terms, provisions, and obligations of the assignments, including this reservation, are binding upon Armour, Sandel Energy, and their successors."). It is instead Muir who seeks to avoid the impact of the provisions of the Warranty Deed that reserved appellees' authority to foreclose as set out in the Deed of Trust. Because appellees had the contractual and statutory right to foreclose, we hold that the estoppel by deed doctrine does not preclude appellees from foreclosing. *See Armour Pipe Line Co.*, 2023 WL 3470426, at *9.

We hold that the trial court did not err when it denied Muir's motion for summary judgment and granted appellees' motion seeking judicial foreclosure. We overrule Muir's first three issues.

**III. The trial court did not err when it granted appellees' motion on Muir's causes of action seeking affirmative relief.**

We turn next to Muir's fourth issue in which he challenges the trial court's dismissal of his claims seeking damages. Muir alleged causes of action against appellees for breach of contract, tortious interference, fraud, violations of Fair Debt Collections Practices Act (FDCPA), violations of the Fair Credit Reporting Act, violations of section 392 of the Texas Finance Code, and for placing an allegedly fraudulent lien on the Property in violation of section 12.002 of the Texas Civil Practices and Remedies Code. The trial court granted appellees' motion for summary judgment on each of these causes of action. Muir argues in his fourth issue that the trial court erred when it did so. We address each claim in turn.

**A. Breach of contract**

To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract between the plaintiff and defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Whether a party has breached a contract is a legal question for the court, not a fact question for the jury when the facts are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010).

Appellees moved for traditional summary judgment on Muir's breach of contract claim. They began by arguing that the only contract at issue was the Warranty Deed because the Letter Agreement merged into that deed. As explained above, we agree. Appellees also pointed out that there could be no oral agreements because the statute of frauds required any loan agreements involving $50,000 or

13

more to be in writing. *See* Tex. Bus. & Com. Code Ann. § 26.02(a)(2). We once again agree. Appellees then argued that there was no breach of the Warranty Deed because they had the contractual right to foreclose and thus acted within the terms of their agreement. As explained above in part II of this opinion, we agree. We hold that the trial court did not err when it granted appellees' motion for summary judgment on Muir's breach of contract claim.

## B. Tortious Interference with Contract

Muir asserted a tortious interference with contract claim against appellees. In Muir's view, appellees, who were NYCB's assignees, interfered "with the existing contract between the Muirs and [NYCB] as well as its assignees." Appellees moved for a no-evidence summary judgment on Muir's tortious interference with contract claim.

The Texas Supreme Court has identified the elements of a tortious interference with a contract claim as (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Appellees argued there was no evidence of any of the required elements.

A party cannot interfere with its own contract. *In re Vesta Ins. Grp.*, 192 S.W.3d 759, 761 (Tex. 2006) (orig. proceeding); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 668 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "A person must be a stranger to a contract to tortiously interfere with it, hence, a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract." *Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997). Here, neither

14

appellee was a stranger to the contract allegedly interfered with, the Warranty Deed, because U.S. Bank was NYCB's assignee and SPS was acting as U.S. Bank's agent. As a result, there was no evidence of at least the second element, a willful and intentional act of interference with a contract. *See Crestor Global Investments Delaware, LLC v. Wilmington Trust, N. A.*, No. 05-19-00563-CV, 2020 WL 2537251, at *4 (Tex. App.—Dallas May 19, 2020, pet. denied) (mem. op.) (affirming no evidence summary judgment because there was no evidence that Wilmington Trust, an assignee, willfully and intentionally interfered with a loan). We hold that the trial court did not err when it granted appellees' motion for no-evidence summary judgment on Muir's tortious interference with contract claim.

## C. Fraud

Muir asserted a fraud claim against appellees. A claim for fraud requires evidence of: (1) a material misrepresentation, which was false; (2) that was either known to be false when made or was asserted without knowledge of its truth; (3) which was intended to be acted upon; (4) which was relied upon; and (5) which caused injury. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Appellees moved for a no-evidence summary judgment arguing Muir had no evidence of any of the essential elements of a fraud claim including damages.

Muir argued in response to the motion for summary judgment and repeats on appeal that he suffered damages caused by appellees' conduct. According to Muir, these damages included a negative impact on his credit score, loss of potential equity if he had purchased another home after forfeiting the Property due to non-payment of the home-equity loan, attorneys' fees and court costs incurred pursuing the present litigation, and mental and emotional damages.

We conclude that Muir's proffered damages evidence is insufficient to

15

create a genuine issue of material fact because the evidence is either speculative or simply does not qualify as compensatory damages. We turn first to the attorney's fees and court costs Muir allegedly incurred. Attorney's fees are not economic damages. *Jesperson v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 660 (Tex. App.—Dallas 2012, no pet.). The same for court costs. *LuxeYard, Inc. v. Klinek*, 643 S.W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (stating court costs are not compensatory damages).

With respect to Muir's alleged mental and emotional damages, Muir testified that he had not seen a doctor "to talk about being stressed." Muir also did not provide direct evidence of the nature, duration, and severity of his mental anguish demonstrating that it caused a disruption in his or her daily routine. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (stating "that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine"). Muir stating that he experienced mental anguish and emotional damage is insufficient to create a genuine issue of material fact. *See id.* ("When claimants fail to present direct evidence of the nature, duration, or severity of their anguish, we apply traditional no evidence standards to determine whether the record reveals any evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger to support any award of damages.") (internal quotations omitted); *Plasencia v. Burton*, 440 S.W.3d 139, 148 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating evidence of mere disappointment, anger, resentment, or embarrassment is insufficient by itself to establish recoverable mental anguish damages).

The result is the same with respect to the alleged impact on Muir's credit

score and any resulting financial impairment. Here, Muir admitted that he did not attempt to obtain any type of loan or mortgage after he signed the Warranty Deed. Muir also testified that he was able to rent residences and lease and purchase multiple vehicles. Muir also candidly admitted that he defaulted on credit card debt and that his credit was bad before he ever signed the Warranty Deed. With respect to an alleged loss of equity, Muir admitted that he never even tried to purchase another home after he signed the Warranty Deed thus any alleged loss of equity is entirely speculative. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 50 (stating that claim of damages cannot be sustained when based on "an entirely hypothetical, speculative bargain that was never struck and would not have been consummated"). If damages are too remote, uncertain, or based purely on conjecture, they cannot support recovery and summary judgment is proper. *See Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because Muir's only proffered evidence of damages is speculative or does not qualify as compensatory damages, we hold that the trial court did not err when it granted appellees' motion for summary judgment on Muir's fraud claim.

### D. Muir's claims under various debt collection acts all fail as a matter of law.

#### 1. Fair Debt Collection Practices Act

Muir alleged a claim under the Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. § 1692(e). Among the purposes of the FDCPA is to ensure that consumers are protected against debt collection abuses. *See id.* Appellees filed both a traditional and a no-evidence motion for summary judgment on this claim, which the trial court granted. We conclude that the trial court did not err when it granted appellees' traditional motion for summary judgment because "the activity

of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." *Bittinger v. Wells Fargo Bank, N.A.*, 744 F.Supp.2d 619, 626 (S.D. Tex. 2010) (internal quotations omitted).

## 2. Fair Credit Reporting Act

Muir also alleged a claim under the Fair Credit Reporting Act (FCRA). Muir asserted that appellees were liable because they "knew or should have known that the debt that SPS was attempting to collect was not a debt owed by [Muir]." *See* 15 U.S.C. § 1681s-2 (imposing duty on furnishers of information to consumer reporting agencies to provide accurate information). A private right of action against a furnisher of information under section 1681s-2(b) requires proof that a consumer reporting agency had previously notified the furnisher of information that there is a dispute regarding the accuracy of the provided information. *See Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) Appellees moved for a no-evidence summary judgment on this claim arguing that Muir had no evidence that appellees received notification from a consumer reporting agency that a dispute existed with respect to the accuracy of information appellees had provided to a credit reporting agency. The trial court granted the motion.

On appeal, Muir argues the trial court erred when it granted appellees' motion on his FCRA claim. Muir does not, however, point out any evidence in the summary judgment record raising a genuine issue of material fact on the requirement that appellees received notice from a credit reporting agency that a dispute existed regarding the accuracy of the information appellees provided to the agency. As a result of that failure, we hold that the trial court did not err when it granted appellees' motion on this claim. *See id.* at 640 ("Young points to no evidence tending to prove that Penney received notice of a dispute from a

consumer reporting agency within five days, as is required to trigger Penney's duties under Section 1681s-2(b). Because Young has not satisfied the notice element with respect to Penney, his FCRA claims fail as a matter of law.").

### 3.  Texas Debt Collection Act

Muir also alleged that appellees violated the Texas Debt Collection Act (TDCA). *See* Tex. Fin. Code Ann. § 392.301 (prohibiting debt collectors from using specified practices). Muir asserted that appellees "committed wrongful acts and omissions in violation of the [TDCA]." To state a claim under the TDCA, Muir must show that (1) the debt at issue is a consumer debt; (2) appellees are debt collectors within the meaning of the TDCA; (3) appellees committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Muir; and (5) Muir was injured by appellees' wrongful act. *Sgroe v. Wells Fargo Bank, N.A.*, 941 F.Supp.2d 731, 743 (E.D. Tex. 2013). In their no-evidence motion for summary judgment, appellees argued that the Muirs had no evidence that appellees committed a wrongful act in violation of the statute. In response, Muir argued that he had provided evidence of misrepresentations made by appellees. The trial court granted the motion.

We conclude that Muir's summary judgment evidence failed to create a genuine issue of material fact because Muir's alleged evidence of misrepresentations all fall within the exceptions found in section 392.301(b). *See* Tex. Fin. Code Ann. § 392.301. This subsection provides that "Subsection (a) does not prevent a debt collector from . . . (2) threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt; or (3) exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* at § 392.301(b). Because the only acts Muir relies on in response to this part of appellees' motion for summary

judgment fit within the statutory exceptions, we conclude that he did not meet his summary judgment burden and the trial court did not err when it granted appellees' motion on Muir's TDCA claim.

### 4. Fraudulent Lien

Muir alleged that appellees violated section 12.002 of the Texas Civil Practices and Remedies Code by filing what he asserts was a fraudulent lien. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) ("A person may not make, present, or use a document or other record with . . . knowledge that the document or other record is . . . a fraudulent lien[.]"). To establish a fraudulent lien claim under section 12.002(a), a plaintiff must show: (1) the defendant made, presented, or used a document with knowledge that it was a fraudulent lien, (2) the defendant intended that the document be given legal effect, and (3) the defendant intended to cause plaintiff physical injury, financial injury, or mental anguish. *Worthing v. Deutsche Bank National Trust Co. for Agent Securities, Inc.*, 545 S.W.3d 127, 137–38 (Tex. App.—El Paso 2017, no pet.). A lien is fraudulent if it was created in bad faith or with dishonesty, a lack of integrity, or moral turpitude. *Nationstar Mortgage, LLC v. Barefoot*, 654 S.W.3d 440, 447 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

Appellees moved for summary judgment on this claim arguing, among other things, that Muir had no evidence that appellees made or presented a fraudulent lien. Having already determined that appellees had the contractual and statutory right to file and enforce the lien on the Property, we agree with appellees. We conclude that the trial court did not err when it granted appellees' no-evidence motion for summary judgment on Muir's fraudulent lien claim. We overrule Muir's fourth issue.

**CONCLUSION**

20

Having overruled Muir's issues on appeal, we affirm the trial court's final judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.